## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DARNELL MCKENZIE (R-12505),    )
    )
       Plaintiff,    )
    )    **Case No. 15 C 8190**
    **v.**    )
    )    **Judge Jorge L. Alonso**
    )
**OFFICER TEAGUE, et al.,**    )
    )
       Defendants.    )

## MEMORANDUM OPINION AND ORDER

Plaintiff Darnell McKenzie, an Illinois prisoner, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that the Defendant police officers violated his constitutional rights related to a March 2015 arrest that led to state criminal charges of which Plaintiff was acquitted in a jury trial. Defendants moved for summary judgment, arguing that they had probable cause for Plaintiff's arrest or are entitled to qualified immunity as to the arrest and that the facts do not support a federal due process claim. Plaintiff responded to Defendants' motion. In light of the recent opinion in *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911 (2017), issued while Defendants' motion was pending, the Court requested that Defendants supplement their summary judgment materials and that McKenzie respond. The parties have complied. For the reasons stated herein, Defendants' motion for summary judgment is granted in part and denied in part.

## NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 56.1

Local Rule 56.1 sets out a procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Fed. R. Civ. P. 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Petty v. City*

*of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a). The opposing party must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The nonmoving party may also present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(C). "[I]f additional material facts are submitted by the opposing party . . ., the moving party may submit a concise reply in the form prescribed in that section for a response." L.R. 56.1(a).

Because McKenzie is proceeding *pro se*, Defendants served him with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. (Dkt. 75.) The notice explained how to respond to Defendants' summary judgment motion and Rule 56.1 Statement and cautioned McKenzie that the Court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1. (*Id.* at 2.)

In response to Defendants' submissions, McKenzie filed a "motion in answer to summary judgment" (Dkt. 77), a "motion in answer to memorandum of law support of their motion for summary judgment" (Dkt. 78), and a "Local Rule 56.1 of Uncontested Material Facts" (Dkt. 79).

2

Plaintiff's first "motion in answer" attaches several exhibits, including an affidavit, "under penalty of perjury under the laws of the United States," in which he asserts that "every thing[sic] [he] said in the motion in Answer to Summary Judgement is true about Chicago police officers." (Dkt. 77, pg. 33.) On February 3, 2017, Defendants responded to each of McKenzie's submissions, and filed a reply in support of their motion. (Dkt. 82, 83, 84.)[1]

Neither party, strictly speaking, complied with Local Rule 56. McKenzie did not directly respond to Defendants' Local Rule 56.1 statement "with a concise response" to each numbered paragraph in Defendants' statement. *See* L.R. 56.1(b). Nor did he generally include citations to the evidence when listing his own facts. Defendants responded to Plaintiff's statement of uncontested material facts, but the response was not "concise" and was not completely "in the form prescribed [in L.R. 56.1(b)] for a response." L.R. 56.1(a). Defendants' response is overly argumentative and did not respond to all facts included within McKenzie's statement. For example, in his SOF ¶ 6, Plaintiff in part stated that the officers' duty belts and vests were obscured by other clothing; Defendants did not address that portion of the statement. (Dkt. 84, pgs. 5-6.) Similarly, Defendants repeatedly assert that McKenzie's arrest was supported by probable cause, even when this does not directly correspond to McKenzie's statements. (*See, e.g.*, Pl. SOF ¶ 14 ("Plaintiff was found not guilty at trial for P.S.M.V. despite the officers alleged perjury."), and Def. Resp. to ¶ 14 (including "Probable cause existed for Plaintiff's March 26, 2015 arrest.").

Notwithstanding the issues with the parties' compliance with Local Rule 56.1, the Court, consistent with the standards governing summary judgment and McKenzie's *pro se* status, has

---

[1] Plaintiff has moved to deny Defendants' motion for summary judgment for the purported failure to reply to Plaintiff's response. (Dkt. 86.) Plaintiff's motion is denied. Defendants had until February 3, 2017, to submit a reply. (Dkt. 71.) Plaintiff, apparently under the misapprehension that this meant that he should *receive* Defendants' reply by that date, moved "to dismiss" Defendants' motion for summary judgment when he had not received it within a few days of that date. (Dkt. 86.) Defendants, however, timely filed their reply on February 3, 2017. (Dkt. 82.)

liberally construed McKenzie's submissions. Given McKenzie's failure to respond to Defendants' L.R. 56.1 statement, the Court accepts Defendants' "uncontroverted version of the facts to the extent that it is supported by evidence in the record." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). However, the Court will not accept Defendants' version of the facts, to the extent that they are unsupported by the cited evidence or to the extent that McKenzie has identified contrary evidence in the record or fact disputes to which he could properly testify. The Court construes the resulting record in the light most favorable to McKenzie. *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602. With these standards in mind, the Court turns to the relevant facts.

## KEY FACTS

McKenzie is an Illinois prisoner currently housed at Dixon Correctional Center. (Dkt. 73, Def. Stmt. ¶ 5.) Defendants Omar Stover and Shikema Teague are police officers for the Chicago Police Department, who, on the morning of March 26, 2015, were assigned to the 15th District. (*Id.* ¶¶ 6, 7, 12.) Officers Stover and Teague and another officer, Nathaniel Warner, who was not named as a Defendant in this case,[2] were partnered and patrolling in a gray unmarked Chicago police vehicle driven by Officer Stover. (*Id.* ¶¶ 8, 13.) The vehicle had municipal license plates ("M-plates") and had siren and emergency light capabilities, through lights located in the headlights, windshield, and rear and side windows. (*Id.* ¶¶ 23, 22.) The officers wore civilian clothes and black, bulletproof vests embroidered with their last names and district number and "police" written in bold white lettering on the back, as well as large silver stars containing their

---

[2] Plaintiff's original complaint indicated an intent to sue a third police officer, whose name McKenzie did not know. The Court informed Plaintiff that, to proceed as to claims against the unknown officer, he would have to conduct discovery to determine the name of that officer and then amend his complaint to name the officer and obtain service. (Dkt. 4, pg. 3.) Plaintiff did not amend his complaint. From the parties' submissions, the Court assumes that Warner was the unidentified party, but Warner was never made a party to this action.

badge numbers (*Id.* ¶¶ 10, 11), but the parties appear to dispute whether the vests may have been visible or partially obscured by sweaters or other outer clothing. (*See* Pl. M. in Answer to Summary Judgment, Dkt. 77, pg. 3; Dkt. 79, Pl. Stmt., ¶ 6; Dkt. 73-4, Pl. Dep., pg. 62:9-10 ("[A]t the time I did not see no vests."); pg. 61:24-62:1 ("Up under – he had – he had a vest on."))

The police officers pulled into a Marathon gas station at 5107 West Madison Street, at the intersection of Madison Street and Leamington Avenue. (Dkt. 73 ¶ 13.) McKenzie was already at the gas station attempting to inflate the flat rear tire of a car with the station's air pump. (*Id.* ¶¶ 12, 14.) Defendants saw McKenzie turn toward their vehicle (although McKenzie disputes seeing them), immediately give up his efforts to inflate the completely flat tire, and get in the driver's seat of his car. (*Id.* ¶¶ 15, 16.) The officers, finding McKenzie's behavior unusual, ran the license plate of the car McKenzie drove through LEADS using the officers' in-car computer. (*Id.* ¶ 18.) Two successive searches revealed that the car had been reported stolen. (*Id.* ¶¶ 18, 19.)

A plodding car chase ensued, as McKenzie drove his hobbled car down Leamington Avenue toward Monroe Street, while the officers pursued in their vehicle. (*Id.* ¶ 19.) The officers observed McKenzie drive through the stop sign at Monroe before he turned left onto Monroe Street and then pulled to the side of the road and stopped the car.[3] (*Id.* ¶¶ 20, 21.) The officers stopped their vehicle just behind the car McKenzie drove, and exited with, according to McKenzie, guns drawn. (*Id.* ¶¶ 26, 27; Dkt. 77, pg. 3.) As they approached, McKenzie again began to drive the disabled car east on Monroe, and the officers returned to their vehicle and followed. (Def. Stmt. ¶¶ 30-32.) At the end of that block, McKenzie pulled to the side of the road and then leapt out of the car and ran northbound, toward Madison Street. (*Id.* ¶ 33.) Officer Warner pursued McKenzie on

---

[3] Defendants assert that they activated their lights and sirens after McKenzie turned the corner; McKenzie asserts that he neither heard sirens nor saw lights. (*Id.* ¶ 22; Pl. Stmt. ¶ 9 ("Defendant's did not activated emergency light which officer Omar Stover lied at trial test to activated emergency light. which is purgery under oath."))

foot, while Officer Stover drove the squad car to Madison to block McKenzie's route. (*Id.* ¶¶ 34, 35.) Officer Teague remained with the reportedly-stolen car. (*Id.* ¶ 36.) McKenzie ran toward the officers' vehicle (and, apparently, a marked police vehicle that had approached from another direction) and, when ordered to do so, got onto the ground and was handcuffed and arrested. (*Id.* ¶¶ 37-40; Dkt. 77, at 3.)

McKenzie insists that he next immediately protested that he had not recognized his pursuers as police officers and, once informed that the car he was driving was stolen, insisted that he was innocent of any wrongdoing. (Dkt. 78, pgs. 3-4.) McKenzie insists that the officers falsely reported what he said, stating in both the ensuing police report and testimony at McKenzie's probable cause hearing that McKenzie had confessed to fleeing because he knew the car was stolen and that he knew his driver's license had been revoked. (*Id.* at 4-5.) McKenzie was charged with possession of a stolen motor vehicle, *see* 625 ILCS 5/4-103(a)(1), and was issued five traffic citations, including driving on a suspended or revoked license. (Def. Stmt. ¶¶ 45-46.)

At the ensuing criminal trial, Officers Stover and Weaver testified. (*Id.* ¶ 49 (Stover); Dkt. 84-1 (Warner).) McKenzie also testified. He explained that, on March 26, 2015, he had been working for his uncle's car repair business, and a client had dropped off the car, with its keys, for repair of a flat rear tire. (Dkt. 73-9, pgs. 4:23-5:11; 5:20-8:22.)[4] McKenzie had taken it to the gas station to attempt to repair the tire with two "fix-a-flat" cans, but gave up when the tire would not hold air after those attempts. (*Id.* at 8:23-9:20.) Although he saw a vehicle tailing him after he left the station, he did not realize that it was a police vehicle; he ran when he saw three individuals he did not know, with weapons drawn, approach him in the disabled car. (*Id.* at 11:14-12:20; 14:2-17; *see also* Dkt. 79, ¶ 8.) The car McKenzie drove had been reported stolen by its owner less than two

---

[4] For this exhibit, the Court refers to the docketed page numbers, rather than the numbers at the bottom of the pages.

weeks earlier, on March 15, 2015, and the owner had not given McKenzie permission to drive it. (Dkt. 73 ¶¶ 43, 44.) The jury found McKenzie not guilty of possession of a stolen motor vehicle (*Id.* ¶ 51), and he was released after having spent approximately 139 days in jail. (Dkt. 77, pg. 2.)

This lawsuit followed, with McKenzie challenging his allegedly wrongful arrest and the ensuing detention during his prosecution. McKenzie claims that he should not have been arrested and that he would not have been detained for trial had Defendants not (falsely, he insists) reported in their write-up of the incident and testimony at his probable cause hearing that he had at the scene of his arrest confessed to fleeing the officers because he knew the car was stolen. (Dkt. 77, pg. 3, 5.)

## SUMMARY JUDGMENT STANDARD

Defendants move for summary judgment in their favor and against Plaintiff. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. County of Cook*, 678 F.3d 560, 566 (7th Cir. 2012). When addressing a motion for summary judgment, this Court construes the facts and makes all reasonable inferences in favor of the non-movant. *Jajeh*, 678 F.3d at 566. The Court's role is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (citations and quotations marks omitted). The Court "may not 'weigh conflicting evidence' . . . or make credibility determinations." *Omnicare, Inc. v. UnitedHealth Group., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citations omitted); *see also Tolan*, 13 S. Ct. at 1866.

After a properly supported motion for summary judgment is made, the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."

*Anderson*, 477 U.S. at 256. To do so, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Moreover, evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits, also will be considered. *Id.*; *Scott v. Edinburg*, 346 F.3d 752, 759-60 & n.7 (7th Cir. 2003). The Court's job as to "a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Although a Court considers facts and reasonable inferences in the light most favorable to the non-moving party, *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014), the non-movant must show more than disputed facts to defeat summary judgment—disputed facts must be both genuine and material. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012).

Invoking this standard, Defendants argue that they are entitled to summary judgment on Plaintiff's claims of false arrest (and qualified immunity on this claim, if not) and a violation of his federal due process rights. (Dkt. 72, 73.) McKenzie argues against dismissal of both claims and also suggests that he wishes to pursue claims that Officer Stover used excessive force against him while at the police station after his arrest and that he was not treated appropriately while in the police lockup. (Dkt. 78, pgs. 11-12.) Defendants contend that McKenzie did not raise any such issues in the operative complaint. (Dkt. 82, pg. 10.-11.) The Court agrees with Defendants that

8

McKenzie's complaint did not allege a claim for excessive force, but rather raises this claim for the first time in his response to Defendants' motion for summary judgment. It is well settled in this Circuit that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (quotation marks omitted) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)); *see also Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 679 (7th Cir. 2005) (affirming district court's refusal to consider claim first raised in plaintiff's response to defendant's summary judgment motion). Thus, the Court will not further address McKenzie's arguments regarding a claim of excessive force or his treatment in the police lockup and analyzes only the claims presented his complaint.

## I.     Probable Cause—Federal False Arrest Claim

Defendants first argue that they had probable cause to arrest McKenzie, thus defeating any claim of false arrest. Because a false arrest claim requires a plaintiff to show that officers lacked probable cause for his arrest, the existence of probable cause is an absolute bar to a false arrest claim. *See Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (citations omitted); *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 682 (7th Cir. 2007) ("[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."). "Police officers possess probable cause to arrest when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense. *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (internal quotation marks and citations omitted). Probable cause requires more than

a bare suspicion of criminal activity, but it does not require evidence sufficient to support a conviction. *Holmes*, 511 F.3d at 679; *see also Matthews v. City of E. St. Louis*, 675 F.3d 703, 706-07 (7th Cir. 2012) ("[T]he sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false."); *Wells v. City of Chi.*, 896 F. Supp. 2d 725, 735 (N.D. Ill. 2012) (citations omitted). When facts sufficient to establish probable cause are undisputed, probable cause is a question of law. *Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999), *overruled on other grounds by Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 1999).

The Court does not evaluate probable cause based upon "the facts as an omniscient observer would perceive them," but instead considers the facts "as they would have appeared to a reasonable person in the position of the arresting officer." *Williams*, 509 F.3d at 398 (internal quotation marks and citations omitted). Thus, "a court looks at the conclusions that the arresting officer might have drawn from the information known to him rather than his subjective reasons for making the arrest." *Holmes*, 511 F.3d at 679; *see also Tebbens v. Mushol*, 692 F.3d 807, 819 (7th Cir. 2012) (noting that court must "examine [arresting officer's] actions objectively—not in terms of his state of mind"); *Johnson v. Nichols*, No. 12 CV 5325, 2015 WL 5693114, at *3 (N.D. Ill. Sept. 28, 2015) ("Determining whether an officer had probable cause to arrest entails a purely objective inquiry; the officer's subjective state of mind and beliefs are irrelevant.").

Illinois law prohibits "[a] person not entitled to the possession of a vehicle" from receiv[ing], possess[ing] . . . [a vehicle] knowing it to have been stolen or converted." 625 ILCS 5/4-103(a)(1). The statute explicitly permits the inference "that a person exercising exclusive unexplained possession over a stolen or converted vehicle . . . has knowledge that such vehicle . . .

is stolen or converted, regardless of whether the date on which such vehicle . . . was stolen was recent or remote." *Id.*; *see People v. Smith*, 589 N.E.2d 895, 897 (Ill. App. Ct. 1992) ("There is an inference that a person exercising exclusive and unexplained possession of a stolen vehicle has knowledge that the vehicle is stolen.").

The circumstances of a particular case determine whether a violation has occurred. While merely being in the vicinity of a stolen vehicle is insufficient to justify an arrest under this statute, *see People v. Garvin*, 812 N.E.2d 773, 779 (Ill. App. Ct. 2004), "an inference of defendant's knowledge [that the motor vehicle was stolen] can be drawn from the surrounding facts and circumstances," even in the absence of direct proof. *People v. Wehrwein*, 545 N.E.2d 1005, 1010 (Ill. App. Ct. 1989) "Evidence of flight may be considered to infer the defendant's knowledge that the vehicle was stolen." *People v. Whitfield*, 573 N.E.2d 1267, 1272 (Ill. App. Ct. 1991); *see also Wehrwein*, 545 N.E.2d at 1007, 1010 (holding that where police officer saw defendant driving stolen vehicle that had been tampered with, which he then abandoned on side of road after officer in unmarked car followed it, knowledge was properly shown); *People v. Kennedy*, 547 N.E.2d 634, 637 (Ill. App. Ct. 1989) (holding knowledge established where police officers testified they saw defendant driving stolen vehicle, chased him when he fled, and caught him within two blocks) (remanded for new trial on other grounds).

Although a conviction under the statute requires that the person in possession of the stolen vehicle have knowledge that it was stolen, police officers need not, at the time of a traffic stop, inquire into the knowledge of a person driving a confirmed stolen vehicle. *Cefalu v. Rocuskie*, No. 12 C 5995, 2014 WL 1563804, at *4 (N.D. Ill. Apr. 17, 2014) ("Nothing required the defendant officers to make a determination at the time of the traffic stop as to whether Cefalu knew that the

11

car was stolen."); *see also Kunz v. Felice*, 538 F.3d 667, 670-71, 682 (7th Cir. 2008) (holding that behavior of suspect driving reportedly stolen car who refused to pull over despite flashing police lights and then attempted to flee on foot "easily exhibited the requisite control to demonstrate scienter"); *People v. Mason*, 571 N.E.2d 1127, 1129 (Ill. App. Ct. 1991) (holding that police officer had probable cause to believe crime had been committed where woman reported to officers that her rental car was in possession of three men she did not know and that only she had authority to loan car).

The parties here agree as to the key events—the officers pulled into a gas station at which McKenzie was already using the air pump. McKenzie soon after drove from the gas station, trailed by the officers, who soon learned, and confirmed, that the car McKenzie drove had been reported stolen. McKenzie pulled over twice, never allowing the on-foot officers to approach him, and then fled on foot before he was arrested. These undisputed facts are sufficient to establish probable cause to arrest McKenzie. This conclusion is unaffected by McKenzie's arguments, which are either irrelevant or would require the Court improperly to consider facts not known to the officers at the time they arrested him. First, Plaintiff asserts that a check of his incarceration records would have established that he was in jail when the car was stolen and therefore could not have stolen it. (Dkt. 77, pg. 7.) That, however, is beside the point. Defendants do not argue that they had probable cause to believe he had stolen the car he drove—they argue that they had cause to believe he *possessed* a stolen motor vehicle.

Second, McKenzie argues that he fled not because he knew the car was stolen (which, he insists, he did not), but because he did not know that Defendants were police officers. (Dkt. 77, pg. 2.) Again, however, he relies on facts that were outside the police officers' knowledge at the time.

Although they drove an unmarked police vehicle, the parties agree that it had municipal license plates, rendering it readily recognizable as a police car. McKenzie, in fact, was aware that municipal plates "means that's a police car. Most definitely. I know that for a fact." (Dkt. 73-4, pg.198:9-10.) Moreover, McKenzie looked in the rearview mirror as the officers approached, (*Id.* at 58:1-15), and there is no indication that the officers realized (or should have) that he had not identified them as police officers, even if their vests, stars and duty belts were partially obscured by their civilian clothing. (*See id.* at 61:23-62:10; Dkt. 79, ¶ 6.) A reasonable officer in their position, approaching a stolen vehicle, would not have realized that McKenzie fled because he had not identified them as police officers, rather than because he wished to escape apprehension for being in possession of a stolen vehicle.

Third, McKenzie points out that there were no overt signs that the car had been stolen within the car itself. The proper keys were inside the car, and there was no damage to the steering column or locks. (Dkt. 77, pg. 4.) But the officers would not have learned of the condition of the vehicle until McKenzie had already fled. Nor is vehicle damage required to be convicted of a violation of § 5/-103(a). *See Kunz*, 538 F.3d 667 ("[625 ILCS 5/4-103(a)] has been applied even when there are no outward signs of theft on the vehicle itself (such as a stripped steering column or punched locks) and when the keys were found in the car.") (citations omitted).

Finally, McKenzie asserts that, after he had been subdued, he told Defendant Stover that he did not know the car was stolen but because he was attempting to fix the flat tire for his uncle's client. (Dkt. 77, pg. 4.) Given McKenzie's previous behavior, however, Officer Stover was not obliged to accept his explanation that he did not know the car he drove was stolen. *Cefalu*, No. 12 C 5995, 2014 WL 1563804, at *4 (stating that officers "were not required to take [plaintiff's] word

13

for it" that she did not know motor vehicle was stolen). Nor was Officer Stover obligated to undertake any additional investigation once probable cause for the arrest existed. *Matthews*, 675 F.3d at 706-07 ("[O]nce probable cause has been established, officials have no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence.").

Although the foregoing points may explain Plaintiff's acquittal as to the criminal charges, they do not undermine the undisputed facts showing that, at the time of his arrest, the officers had probable cause to believe that McKenzie had committed the offense of possession of a stolen motor vehicle.[5]

## II.      Unlawful Post-Legal-Process Detention

That there was probable cause for Plaintiff's arrest, however, does not resolve McKenzie's chief complaint that, before his acquittal, he was prosecuted and jailed for 139 days, allegedly because of false statements in Officer Stover's police report and Officer Teague's testimony at his probable cause hearing.[6] The officers allegedly falsely reported that, when McKenzie was taken into custody, he explained his flight from them by acknowledging that he knew the car was stolen and that he did not have a valid driver's license. (Dkt. 77, pg. 3, 5.) McKenzie denies saying that and insists that he actually had protested his innocence and explained his possession of the car. (*Id.* at 3, 4.) He claims that probable cause to detain him was found because of the falsified statements. Defendants argued in their motion that the "uncontested facts" show that the evidence upon which Plaintiff's arrest and prosecution relied was not false" and that "Plaintiff cannot credibly" suggest

---

[5] Because Defendants had probable cause to arrest Plaintiff, the Court does not address Defendants' alternative argument that they are entitled to qualified immunity as to Plaintiff's false arrest claim. Defendants do not argue that they are entitled to qualified immunity as to any claim stemming from Plaintiff's pretrial detention.

[6] McKenzie also states that Officer Stover testified falsely at his criminal trial (Dkt. 77, pg. 6), but that testimony is not alleged to have lead to incarceration, given McKenzie's acquittal.

that they falsified evidence. (Dkt. 74, pg. 10.) They insisted that McKenzie failed to state a due process claim as it had been described by the law of this circuit, and that he at best raised a state-law claim for malicious prosecution. (*Id.* at 10-11.)

During briefing on Defendants' motion, the Supreme Court issued *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 918-19 (2017), in which the Court rejected the Seventh Circuit's long-standing rule that the due process clause governs claims as to detention after the institution of legal process. Manuel had been detained based upon police officers' repetitive false statements in police reports and a probable cause hearing that he had been found with ecstasy pills, although all tests of the pills, including a field test rendered when the pills were discovered, came back negative for illicit substances. *Id.* at 915. Manuel was detained for 48 days before the test results came to light and the charges were dropped. (*Id.* at 916.) The Court held that the Fourth Amendment not only governed a claim as to the arrest itself but also "governs a claim for unlawful pretrial detention even beyond the start of legal process," at least "when legal process itself goes wrong," such as when "a judge's probable-cause determination is *predicated solely on a police officer's false statements.*" *Id.* at 919, 920 (emphasis added).

Because McKenzie claims that Defendants falsified evidence that led to his extended pretrial detention, the Court requested that Defendants submit a supplemental summary judgment brief, including any relevant evidence, such as documents and transcripts from the probable cause hearing, in conformance with Local Rule 56.1, and that McKenzie respond.

Defendants in their supplemental brief stand on their original motion, arguments, and record. They insist that *Manuel* is inapposite because, there, "every test done on the pills, the sole basis for petitioner's arrest, came back as negative for controlled substance," whereas, here,

McKenzie admits some incriminating facts, such as that he was driving a stolen vehicle (although the Court notes that he vigorously disputes having had knowledge of its provenance) and did not have a valid driver's license. (Dkt. 95, pg. 4.) Thus, they argue, the "uncontested facts here show that the evidence upon which [McKenzie's] arrest *and prosecution* relied was not false, but supported by multiple sources," and that McKenzie "cannot credibly argue that Defendants fabricated evidence against him." (*Id.* (emphasis added.)) In their conclusion, they argue "the uncontested facts are clear that [Defendants] did not fabricate evidence against Plaintiff, who was acquitted at trial, thereby defeating Plaintiff's substantive due process claim." (*Id.*)

McKenzie responds that, despite Defendants' bald reference to the evidence on which his prosecution relied, they in fact provided no evidence, such as probable cause hearing transcripts, to demonstrate the basis of his post-legal-process detention. (Dkt. 98, pg. 3.) He argues that the transcripts would show that the officers' allegedly false reports regarding his post-arrest confession "lead [sic] the judge into fineing [sic] probable cause." (*Id.*)

Under the particular circumstances presented here, the Court agrees that summary judgment is not warranted. To detain a suspect for trial, "[t]he standard is the same as that for arrest[]—probable cause to believe that the suspect has committed a crime," but there must be "a timely judicial determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 120, 126 (1975). *Manuel* explained that, in some circumstances, an arrestee may state a Fourth Amendment claim "for his (post-legal-process) pretrial detention" where this required probable-cause determination rested entirely on police officers' false statements. 137 S.Ct. at 918. McKenzie says that is what happened here—that between his arrest and ensuing prosecution police officers made false statements that caused his continued detention—and his version of what occurred at the probable

cause hearing is not factually contested in this record. Nor can the Court on this record deem McKenzie's testimony that the probable cause determination hinged on the police officers' allegedly false statements facially incredible. *See Omnicare, Inc.*, 629 F.3d at 704. While with a complete record it might have been clear that the determination of probable cause in McKenzie's criminal case was not "predicated solely on a police officer's false statements," *Manuel*, 137 S.Ct. at 920, on this record, Defendants are not entitled to summary judgment on McKenzie's claim that his post-legal-process pretrial detention was unlawful.

## CONCLUSION

For the above reasons, Plaintiff's "motion to dismiss Defendant's motion for summary judgment for failure to reply to Plaintiff answer to Defendant motion for summary judgment" [86] is denied. Defendant's motion to supplement motion for summary judgment [95], which merely seeks leave to file the supplement requested by the Court, is granted. Defendants' motion for summary judgment [72] is granted in part and denied in part. McKenzie's federal false arrest claims are dismissed with prejudice. Defendant's motion is denied as to Plaintiff's claim that his post-legal-process pretrial detention was unlawful. Plaintiff's motion for status hearing date [99] is granted. This case is set for status on October 4, 2017, at 10:15 a.m. The parties are to discuss potential resolution of this lawsuit prior to the status date. Plaintiff's motion for up date [sic] on status hearing for summary judgment court hearing [88] is denied as moot.

**SO ORDERED.**

ENTERED:

9/1/17

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

HON. JORGE ALONSO
United States District Judge